Charles E. HENRY et ux., Appellants,

v.

AMERICAN AIRLINES, INC., Appellee.

No. 4122.

Court of Civil Appeals of Texas.

Eastland.

March 3, 1967.

Rehearing Denied April 7, 1967.

Peticolas, Luscombe & Stephens, John B. Luscombe, Jr., El Paso, for appellants.

Kemp, Smith, White, Duncan & Hammond, Jack Ratliff, El Paso, for appellee.

GRISSOM, Chief Justice.

Charles E. Henry and wife sued American Airlines, Inc., for damages alleged to have been suffered when Mrs. Henry's crutch slipped on an "oil slick" at the Nashville airport while the Henrys were about to board appellee's plane there en route from El Paso to Knoxville. Plaintiffs alleged that Mrs. Henry was crippled, having a fused right hip; that she was using crutches going toward defendant's plane, while other passengers surged about her, and, as she reached the stairs leading up to the plane, her left crutch slipped on an "oil slick", a dangerous and hazardous condition at the foot of the stairs, causing her body to twist violently to maintain her balance and resulting in serious permanent bodily injury. The Henrys alleged that American Airlines was guilty of the following acts of negligence and that each was a proximate cause of Mrs. Henry's injury and damage:

(A) In failing to furnish Mrs. Henry reasonably safe premises for boarding its plane when it knew, or should have known, of the oil slick at the foot of the stairs;

(B) In failing to warn her of the existence of the oil slick when it knew, or should have known, of its existence, as a person exercising a high degree of care would have done under the same or similar circumstances;

(C) In failing to permit her to board the aircraft in advance of other passengers when it knew, or should have known, of her physical condition.

(D) In permitting other passengers to surge about her in boarding its aircraft, without affording her time to board the plane;

(E) In failing to post an employee at the foot of the stairway to aid passengers and

(F) In failing to place abrasive material over the "oil slick."

In the alternative, the Henrys alleged they were passengers on appellee's airline between El Paso, Texas and Knoxville, Tennessee on August 7, 1964, and that it was necessary to change planes at Nashville; that, upon arrival at Nashville, the Henrys awaited the departure of appellee's flight to Knoxville; that American Airlines had the management and control of the boarding of its passeengers, in that, it had the management and control of the placing of its plane on the runway; management and control of placing the stairway; management and control of access to its plane, in that passengers were not permitted to board the plane until called; that when said flight was called for boarding Mrs. Henry proceeded in a careful and prudent manner from the airport building to the ramp, or stairs, to board its plane; that she was walking with the aid of crutches and as she was about to go up the stairs her left crutch suddenly slipped from under her causing her body to twist violently in an effort to regain her balance, severely wrenching her back and left hip and causing serious and permanent injury; that American owed Mrs. Henry, as a passenger, a high degree of care to furnish safe access to its plane; that by the defendant's management and control of the boarding of passengers it was in a position of superior knowledge concerning the condition of said access and, but for some act of negligence by appellee, better known to it, Mrs. Henry would not have been injured and that plain-

tiffs relied upon the doctrine of res ipsa loquitur.

A jury found (1) that Mrs. Henry was not injured; (2) that American placed the passenger loading ramp "at or near an oil slick or smudge"; (3) that the condition of the oil slick or smudge did not prevent such place from being a reasonably safe place for Hrs. Henry to board the plane; that (6) Mrs. Henry did not slip on the oil slick or smudge; that (9) appellee did not fail to warn Mrs. Henry of the oil slick or smudge "as a very cautious and prudent person would have done under the same or similar circumstances;" that (11) American did not know that Mrs. Henry was physically handicapped; that (12) American should not have discovered that she was physically handicapped in the exercise of a degree of care that a very careful and prudent person would have exercised under the same or similar circumstances; that (16) Mrs. Henry did not fail to keep a proper lookout for her own safety; that (18) Mr. Henry failed to properly assist his wife "immediately prior to her loss of balance, if she did lose her balance;" that (19) the failure of Mr. Henry to properly assist his wife was negligence which (20) was a proximate cause of Mrs. Henry's injuries, "if any;" that (21) Mrs. Henry did not know of the existence of the oil smudge before she lost her balance, "if she lost her balance" that (23) Mrs. Henry did not know that the "oil smudge was hazardous to persons on crutches, if it was"; that (24) the injuries, if any, suffered by Mrs. Henry were the result of an unavoidable accident. In answer to question (25), what sum of money would reasonably compensate Mrs. Henry for the injuries and damages, if any, which were a proximate result of the incident in question, the jury said "none". In other words, the jury found that Mrs. Henry didn't slip on the oil smudge; that she wasn't injured and that she suffered no damages. Based on said findings, the court rendered judgment that the Henrys take nothing. They have appealed.

Appellants' first point is that the court erred in refusing to submit to the jury appellants' requested issues submitting the doctrine of res ipsa loquitur because that theory of liability was raised by the pleadings and evidence. In support thereof the Henrys say they were passengers on American Airlines flight from El Paso to Knoxville and it was necessary to change planes at Nashville; that Mrs. Henry was crippled and walked with the aid of two aluminum crutches; that at Nashville they awaited their flight in the airport at facilities furnished by appellee; that they were required to remain in a waiting room furnished by appellee and were not permitted access to the plane until an attendant unlocked its door and permitted the passengers to board; that the plane was positioned on the runway by appellee and the loading ramp was placed in position by appellee; that appellee's crew had access to the plane for one-half hour before departure and for fifteen minutes before boarding by passengers; that there was an oil slick near the base of the stairs; that appellee called the flight for boarding, the Henrys proceeded out the runway to the stairs with Mrs. Henry ahead of her husband, who had fallen behind to protect her, since she was walking with the aid of crutches and, as she was about to mount the stairs, the tip of one crutch slipped on the oil smudge, she lost her balance, and as she fell she twisted her back and hip attempting to regain her balance but that she was saved from completely falling to the concrete by her husband catching her on the way down when she was in approximately a sitting position; that the incident was promptly reported and soon after boarding Mrs. Henry began to feel pain, which became worse. The Henrys argue that at the time Mrs. Henry claims she slipped and was injured they were passengers and appellee owed her a high degree of care to furnish her with reasonably safe facilities, equipment and means of ingress and egress; that by their pleadings they gave notice to appellee that they would rely

upon the doctrine of res ipsa loquitur; that the evidence established that the boarding was under the control and management of appellee, as was placement of the aircraft on the runway and placing of the gangplank; that it was uncontradicted that there was an oil slick near the base of the loading ramp and that they had no opportunity to see it before loading and no warning was given of its existence but that the access and approach to the plane were under appellee's management and control. Appellants say the principle which required the court to submit their requested issues submitting the case under the doctrine of res ipsa loquitur were announced in Honea v. Coca Cola Bottling Company, 143 Tex. 272, 183 S.W.2d 968, 969, 160 A.L.R. 1445, as follows:

"Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer."

The issues submitting the theory of res ipsa loquitur which appellants requested the court to submit inquired (1) whether the approach to the plane was under the management and control of appellee; (2) whether it failed to maintain its approach and access to its plane in a reasonably safe condition as a very cautious and prudent person would have under the same or similar circumstances and (3) whether such failure, if any, was a proximate cause of Mrs. Henry's injuries. The Henrys say the court erred in refusing to submit them because they were raised by the pleadings and evidence. They cite in support of that contention Montgomery Ward & Co. v. Scharrenbeck, Tex.Civ.App., 199 S.W.2d 830, affirmed 146 Tex. 153, 204 S.W.2d 508; Dallas Railway & Terminal Co. v.

Clayton, Tex.Civ.App., 274 S.W.2d 422 (ref. n. r. e.); Mattox v. C. R. Anthony Company, Tex.Civ.App., 326 S.W.2d 740 (ref. n. r. e.) and Smith v. Koenning, Tex. Civ.App., 398 S.W.2d 411 (ref. n. r. e.).

Appellee says the court did not err in refusing to submit said issues; that appellants pleaded and attempted to prove in great detail that Mrs. Henry walked on the airport runway using crutches and was injured when a crutch slipped on an oil slick near the stairs; that the Henrys were the only people who testified that she slipped; that they testified at great length about the accident, how it happened, fixing the exact cause thereof. Appellee says the burden was upon the Henrys to first prove that an accident occurred but the jury found there was no accident; that Mr. Moore, appellee's employee, testified that his attention was called to Mrs. Henry as she walked to the plane because of the type of crutches she was using; that he saw her when she was out of the building a few feet and continued to watch her until she went up the stairs; that he did not see her slip or fall, make a violent movement of any kind or see any one grab or support her; that the first time he knew about her claim that she had slipped was when he saw appellee's employee with a camera and was told that some lady had fallen and that there were no people immediately around her but there were some soldiers behind her. He was shown photographs of the oil smudge and testified that it appeared to be an old dark spot without any marks on it; that the concrete there was unfinished and rough and it was just a dark spot on the concrete; that he watched Mrs. Henry because she was walking with crutches like those used by a friend. A stewardess testified that she was standing inside the doorway as the passengers boarded the plane so she could examine their tickets as they went in; that she first saw the Henrys when they boarded the plane; that she noticed Mrs. Henry because she had crutches; that she did not remember the Henrys saying anything to

her about having oil on a crutch, as the Henrys testified they did; that, after all the passengers had boarded the plane and had been seated, Mr. Henry came to her and told her that his wife had slipped and fallen; that he wanted her to "make a note of it"; that she offered to help them but was advised that it was not necessary, but she reported the incident; that Mrs. Henry was not assisted when she boarded the plane; that later Mrs. Henry asked for an aspirin and that she entered and left the airplane without assistance. The stewardess testified that when she went out to the plane she did no see any fresh pool of oil around the stairs and that she did not recall Mrs. Henry telling her that she did not want to track oil on the carpet. Appellee concludes that there was ample evidence to support the findings that no accident happened; that Mrs. Henry was not injured and she suffered no damages. They further correctly say that the airport was owned by the City and appellee did not have exclusive use of the part where the accident was claimed to have happened but that other airlines and individuals also used that part of the airport.

Appellee says that before the doctrine of res ipsa loquitur can be applied appellants must establish to the satisfaction of the jury that an accident occurred; that the Henrys failed to establish this; that they were also required, after establishing such fact, to show that the accident was of a kind which ordinarily does not occur if due care is exercised and that the injury was caused by something under the exclusive control of appellee and that the injured person was free of contributory negligence. Appellee says that appellants did not establish any of them. Appellee cites in support of their answers to appellants' contention International Creosoting and Construction Company v. Daniel, Tex.Civ.App., 114 S.W. 2d 393, 395 (writ dis.); Alley v. Texas Electric Service Company, Tex.Civ.App., 134 S. W.2d 762, 769; Carothers v. Olshan, 198 S.W.2d 941, 943 (ref. n. r. e.) and Longoria v. Violet Gin Co. et al., Tex.Civ.App., 309 S.W.2d 484 (ref. n. r. e.).

Appellee says, but incorrectly, that the only instrumentality involved was Mrs. Henry's crutch and that it was not under its control. The thing that was alleged to have caused the accident and did cause it, if there was one, was an oil smudge or slick on rough concrete on the airport runway near the place where the stairs were lowered to permit passengers to board the plane. Appellee cites Southland Industries v. O. R. Mitchell Motors, Tex.Civ. App., 244 S.W.2d 528, 530 (ref. n. r. e.), wherein the court pointed out that the plaintiff knew the manner in which the fire was started when he filed suit; that the deposition of an eye witness had been taken which disclosed how the fire started, and since the plaintiff knew how the fire started and what caused it the res ipsa loquitur doctrine was not applicable. Appellee says the Henrys knew how they claimed an accident happened, and testified to the exact cause; that since the main reason for applying said doctrine is necessity, arising from an absence of such knowledge, the doctrine is not applicable here, all such facts and circumstances being in evidence. It also cites in support of that conclusion Dallas Railway & Terminal Company v. Clayton, Tex.Civ.App., 274 S.W.2d 422. See also 65A C.J.S. Negligence § 220.6, p. 539. Said decisions support appellee's conclusion. In Welliver v. Lone Star Gas Company, Tex.Civ.App., 260 S.W.2d 70 (writ ref.), the court pointed out that the theory of res ipsa loquitur in relation to control and management of the thing that caused the injury is that the defendant has superior knowledge or means of information to determine the cause of the injury. Appellee says appellants wholly failed to establish any ground for submission of issues under that doctrine; that appellants did not establish that an accident occurred; that the finding of no accident was supported by the testimony of Moore and Larkin, and that the airport and the concrete runway where the oil

smudge was located was not under the exclusive control of appellee. Appellee says that the cases cited by appellant deal with some specific instrumentality, such as an exploding coke bottle, an exploding water heater, a guard rail, which a bus ran into, and an escalator. Appellee says, and we think correctly, that the facts in the cases cited by appellant are materially different from those here and said cases do not support appellants' contention that the court committed reversible error in refusing to submit issues under the doctrine of res ipsa loquitur. In Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 667, the court said:

"An essential allegation necessary to warrant its application in a case in which defectiveness in equipment is alleged is that the management and control of the equipment which produced the injury shall be with the defendant exclusively."

In Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636, 639, the court said:

"In this case if plaintiffs had alleged generally that the defendant set off the blast and that the claimed damages to them proximately resulted therefrom, leaving negligence to be inferred from the fact of such blast we would be confronted with res ipsa loquitur. But they are not content so to pitch their case. They follow up their charge that the defendant set off the blast with an allegation of the specific acts which they say made it an act of negligence. Hence res ipsa loquitur is not in the case."

In Estrada v. Central Power & Light Company, Tex.Civ.App., 336 S.W.2d 768 (writ ref.), the court said:

"In order to invoke the doctrine of res ipsa loquitur there are four elements which must be pleaded and proved: (1) The thing or instrumentality which causes the injury must be under the management of the defendant or his servants; (2) the accident must be such as in ordinary course of events does not happen, if those who have its management and control use proper care; (3) there must be an absence or unavailability of direct evidence of negligence; (4) there must exist a sufficient duty on the part of defendant to use due care. 65 C.J.S. Negligence §§ 220(2) and 220(4), pp. 987–999."

■ Appellants' testimony shows that they knew how the accident claimed by them occurred and what caused it. The evidence shows that the place where the cause of the asserted accident was located was not under the exclusive control of appellee. Under the authorities cited we think the court did not err in refusing to submit said issues. What has been said, we think, answers appellants' contention that the court committed reversible error in refusing to submit the requested issues, thereby submitting the case for the plaintiff under the doctrine of res ipsa loquitur. There is another reason why the refusal to submit said issues did not constitute reversible error. Suppose the court had inquired, as appellants requested, (1) whether the approach to the plane was under the control of American; (2) whether it failed to maintain such approach in a reasonably safe condition and (3) whether such failure was a proximate cause of Mrs. Henry's injuries and, further, assuming that the jury answered them favorably to the plaintiffs, the plaintiffs still could not have recovered because the jury found that Mrs. Henry did not slip; that she was not injured and that she suffered no damage. Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 342; Hammon v. Texas & New Orleans Railroad Company, Tex.Civ.App., 382 S.W.2d 155, 160 (ref. n. r. e.); Blanton v. E. & L. Transport, 146 Tex. 377, 207 S.W.2d 368, 369; Quintero v. Sinclair Refining Company, 5 Cir., 311 F.2d 217; Brown v. Dallas Gas Company, Tex.Civ.App., 42 S.W.2d 869 (writ ref.); Webb v. City of Lubbock, Tex.Civ.App., 380 S.W.2d 135, 137; Maynard v. Dallas Railway & Terminal Com-

pany, Tex.Civ.App., 291 S.W.2d 363. Thus, for an additional reason, we conclude that the court did not commit reversible error in refusing to submit said requested issues.

■ Appellants' second point is that the evidence conclusively established that Mrs. Henry was injured on August 7, 1964 while boarding appellee's plane and therefore there was no evidence to support the answer to issue 1 that she was not injured. Their third point is that the evidence was insufficient to support that answer. Appellants also complain, under their 4th and 5th points, that the evidence conclusively established that the condition near the base of appellee's loading ramp prevented it from being a reasonably safe place for Mrs. Henry to board the plane and, therefore, there was no evidence to support the finding that such "oil slick" did not prevent it from being a reasonably safe place for Mrs. Henry to board the plane and, also, that there was insufficient evidence to support said answer. We think the evidence of Moore and the stewardess was sufficient to support said findings. Tersely stated, Moore's testimony was that he watched Mrs. Henry from about the time she left the waiting room until she boarded the plane and that she didn't slip or fall and no one grabbed her; that is just the opposite of the testimony of appellants that Mrs. Henry's left crutch slipped on the oil smudge on the concrete near the stairway and that she fell nearly to a sitting position, violently twisting and injuring her back, at which point she was caught and prevented from completely falling to the pavement by her husband. There was evidence that the oil stained spot on the concrete runway showed no sign of anything sliding on it and that it was an old oil discoloration on rough concrete. The testimony of Dr. Cameron, who testified for appellants, is too long to be repeated here but it justifies the conclusion that Mrs. Henry was born with a defective hip; that he began seeing her as early as 1959; that her complaint then was chiefly about her knee but her back also hurt; that he saw her in 1961, when she was having pains in her left leg; that sciatic pains in her left leg continued until she had surgery in 1963; that in 1961 he thought she needed an operation; that in October 1961 she had an accident; that she had neuritis on the left side; that her complaint in 1963 was comparable to her complaint in 1961; that, in August 1962, she complained of pain in her whole leg; that this related to what he thought an operation might be necessary for back in February 1961; it was the same type of thing; that he put her on crutches in July 1962 and she was on crutches one year before she had an operation and laminectomy; that in October 1962 he told her to continue using crutches until December; that in the Summer and Fall of 1962 she was having a real hard time; that in March 1963 she was having difficulty with one knee and then the other and trouble with her back and hip; that in August, 1963 she developed a severe back trouble; her back was operated in August 1963 for a ruptured intervertebral disc between the 4th and 5th lumbar vertebra; that in September 1963 he put her on crutches indefinitely; that in November 1963 she called on him again complaining of her back; that in 1964 she complained of her back; that she was then having a hard time and he didn't know how she was continuing to work; that in May she injured her knee in an accident; that since 1959, off and on, she had been having a lot of problems; that all of her pain relates back as far as 1961 and is due to the same disc condition; that it was a "recurrent disc"; that the disc was removed; that people have multiple operations for removal of the same disc; that the pain she now has is the same she had before the incident boarding the plane. We think it is important that he testified that it would take a violent sort of thing, more than the body could bear, to create the condition that Mrs. Henry now has. This certainly indicates that her condition is not the result of merely slipping and being caught by her husband before she reached the con-

crete. Mrs. Henry testified that she was born with a defective right hip; that she had an operation in 1945; that her hip was solid; that a cartilage was removed from her knee; that a year before boarding the plane she had a very serious operation on her back; that she had back trouble in 1952 or 1953, when she slipped in a food store and made a claim for damages and that, in August 1963, she bent over to pick up a piece of paper and had a severe pain in her back and the doctor told her she had a herniated disc. She testified that she first noticed her disc problem in 1959.

The jury did not believe there was an accident. It did not believe Mrs. Henry was injured while boarding the plane. It did not believe she was damaged. It evidently thought that she was claiming damages from appellee for the same old infirmity that had been plaguing her since, at least, 1959, which caused an operation a year before the alleged accident that is the basis of this suit and which, according to her physician, was a recurrent condition. The pictures of the spot on the concrete near the foot of the stairs to the plane in front and to the left of the left-hand side of the stairs, according to some testimony, looked like an old oil stain where the concrete was rough and unfinished, just a black spot on the concrete which showed no sign that a crutch had slipped on it. The jury had a right to conclude that the thing on the concrete was an old oil stain that did not create a dangerous condition. As stated, the Henry's physician testified that only a violent sort of thing, more than the body could bear could cause her condition. Mr. Moore testified he watched her; he saw no violent action, no slip, no fall, and he saw no one grab and support her. There was evidence that she boarded the plane and got off without assistance. We conclude that there was not only some evidence but sufficient evidence to support the controlling findings to the effect that there was no accident, no injury and no damages.

Appellants present the contention that there was no evidence, or insufficient evidence, to authorize the submission and answers to other issues. They were rendered immaterial by the answers to issues 1 and 6 that Mrs. Henry did not have an accident and suffered no injury while boarding the plane. It was, in effect, so held in the following cases: Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614 (writ ref.); Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Dallas Ry. & Terminal Company v. Orr, Tex.Civ. App., 210 S.W.2d 863, 869, affirmed on other grounds 147 Tex. 383, 215 S.W.2d 862; Bruce v. Denton County Electric Cooperative, Inc., Tex.Civ.App., 377 S.W.2d 722, 724; Commercial Standard Insurance Company v. Ford, 400 S.W.2d 934, 938 (ref. n. r. e.) and West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199, 202.

Appellants' 14th and 15th points assert Mr. Henry had no duty to assist his wife and that issue 19 assumed vital facts and (16) that Mr. Henry could not foresee his wife's injury. They also complain of the definition of unavoidable accident. The jury found that there was no accident and no injury. Other issues and answers as to negligence and proximate cause thereupon became immaterial. If we should assume that otherwise there was error, said findings of no accident and no injury prevented appellants from recovering damages and errors in submitting and answering other issues became immaterial. Martin v. Jenkins, Tex.Civ.App., 381 S.W. 2d 115, 122 (ref. n. r. e.).

■ The finding that appellants sustained no damages is understandable because the jury evidently thought that, there being no accident and no injury, no damage was suffered at this occasion. The jury's findings of no accident and no injury was supported by the evidence and required rendition of a judgment for appellee. Southern Pine Lumber Company v. Andrade, 132 Tex. 372, 124 S.W.2d 334, 335; Dunn v. Sears Roebuck & Company, Tex.Civ.

App., 371 S.W.2d 731 (ref. n. r. e.); Dillon v. Moore, Tex.Civ.App., 367 S.W.2d 70, 71. Most of the asserted errors not specifically disposed of were rendered harmless by said findings. In Patterson v. East Texas Motor Freight Lines, Tex.Civ. App., 349 S.W.2d 634 (ref. n. r. e.), a jury found the appellant guilty of negligence proximately causing the accident. The appellee was found not guilty of negligence. Judgment was rendered for the appellee. Appellants asserted the court committed reversible error by inquiring as to a matter of contributory negligence. It was held that it was not necessary to consider such an assignment because all issues relating to the alleged primary negligence of appellee were answered in its favor and any error in the manner of submitting contributory negligence of appellant was immaterial, because no judgment other than one for appellee could have been rendered. Here a jury found there was no accident and no injury. Those findings were supported by sufficient evidence, which has been mentioned, therefore appellants could not have recovered regardless of other issues and answers. All of appellants' points are overruled. The judgment is affirmed.